Opinion issued January 12, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00027-CV

———————————

Naan Properties, LLC and Ahmadali Virani, Appellants

V.

Affordable
Power, LP,
Appellee



 



 

On Appeal from the County Civil Court at Law No. 3

Harris County, Texas



Trial Court Case No. 952,680

 



 

MEMORANDUM OPINION

This is a
restricted appeal from a post-answer default judgment.  In two issues, defendants/appellants Naan
Properties, LLC and Ahmadali Virani argue that the trial court erred in
rendering judgment for plaintiff/appellee Affordable Power, L.P. because (1)
“the face of the record shows appellants’ attorney did not have notice of the
trial setting and appellants’ constitutional rights to due process were
denied,” and (2) “the evidence is legally and factually insufficient to support
the judgment on any cause of action pled.” 
We reverse and remand the trial court’s judgment.  

BACKGROUND

On December 8, 2009, Affordable
Power sued the defendants to recover amounts allegedly owed under a retail
electric service agreement.  It sought
$29,615.04 in actual damages under the alternative theories of breach of
contract, suit on a sworn account, UCC violations, and quantum meruit, as well
as interest and attorney’s fees.  To
prove up its suit on a sworn account, Affordable Power attached to its petition
(1) an “Affidavit of Amount Owed” by a Collections Analyst for Affordable
Power, (2) Affordable Power’s “Commercial Terms of Service 12/24/36 Month L.
Commercial Fixed Rate Products,” (3) an August 8, 2008 “Commercial Enrollment
Authorization” form executed by defendant Virani on behalf of Naan Properties,
L.L.C. and designating defendant Viani as “Guarantor,” (4) a December 4, 2008
bill for electric services totaling $12,994.18, and (5) a March 4, 2009 invoice
reflecting a “Final Bill” amount of $12,994.18 and adding an “Early Termination
Fee” of $16,620.86 for a total of $29,615.04.         

On January 11, 2010, the defendants
filed their original answer through an attorney, J. Michael Fieglein.  Fieglein’s address on the answer was “3305
75th Street, Galveston, TX. 77551.” 
Despite that answer being on file, on January 28, 2010, Affordable Power
filed a “Motion for No-Answer Default Judgment.”  The motion does not contain a certificate of
service, nor does it make reference to the defendants’ answer or attorney.  

On March 25, 2010, the trial court
entered an order setting the case for a non-jury trial on July 7, 2010.  The record reflects that the order was mailed
by the court to Fieglein at “Texas First Bank Building, 6501 Stewart Rd. #201,
Galveston, Texas 77550.”[1]  The court’s order stated: “It is further
ORDERED that PLAINTIFF notify all attorneys or pro se parties of this ORDER by
certified mail, return receipt requested immediately.”  The envelope containing the court’s trial
notice to Fieglein at the Stewart Road address was returned to the trial court
on April 1, 2010 with a postal service notation: “Not deliverable as addressed;
unable to forward.”  

On April 16, 2010, Affordable Power
filed a “Certificate of Written Discovery,” certifying that, on April 9, 2010,
the defendants were served through their attorney at “3305 75th Street,
Galveston, Texas 77551 by certified mail return receipt requested and regular
first class mail, . . . the following discovery requests: (1) Plaintiff’s First
Set of Request for Admissions; and (2) Plaintiff’s First Set of Interrogatories
and Request for Production to Defendants.”    


Neither the defendants nor their
attorney Fieglein showed up at trial on July 7, 2010.  Affordable Power’s attorney confirmed that he
had sent to Fienglein the court’s notice of trial setting.  In support, he introduced into evidence an
April 9, 2010 letter to Fieglein at his 75th Street address enclosing “(1)
Order for Trial Setting for July 7, 2010; (2) Certificate of Written Discovery;
(3) Plaintiff’s First Set of Requests for Admissions; and (4) Plaintiff’s First
Set of Interrogatories and Request for Production.”  As part of the same exhibit, Affordable Power
introduced the request for admissions, which had a certificate of service
attached certifying that “the above and forgoing” was served on Fieglein at the
75th Street address.  The exhibit also
included the certified mail green return card signed by Fieglein on April 12,
2010.  

Affordable Power introduced a
second exhibit containing a business records affidavit attaching: 

(1)     the same August 8, 2008 “Commercial Enrollment Authorization”
form attached to its petition; 

(2)     a “Retail Electric Service Agreement” between Affordable Power
and the Greater Houston Retailers Association, Inc. with a term of June 2008 –
April 2010, as well as a “Electricity Pricing Structure,” and “Commercial Terms
of Service,” each of which appear to be initialed by the Affordable Power and
Greater Houston Retailers Association’s signatories to the Retail Electric
Service Agreement;

(3)     the defendant’s October 3, 2008 electric services bill for
$5,568.48, a November 30, 2008 electric services bill for $12,447.29, and the
two bills attached Affordable Power’s petition—the December 4, 2008 final bill
for $12,994.18 and the March 4, 2009 bill adding the $16,620.86 Early
Termination Fee for a total of $29,615.04; and

(4)     two pages of computer screen shots of what appear to be
Affordable Power’s internal account records related to the defendants.  

After noting that the admissions
were deemed admitted and admitting the exhibit containing the business records affidavit
and underlying documents, the trial court stated it would render judgment for
Affordable Power.  That same day, the
court signed a default judgment in Affordable Power’s favor.  On January 3, 2011, the defendants filed
notice of restricted appeal complaining that they lacked notice of the trial
and that the evidence did not support judgment in Affordable Power’s favor. 

Restricted
Appeal

A restricted appeal is a direct
attack on a judgment.  To prevail on a
restricted appeal, the appellant must show (1) it filed notice of the
restricted appeal within six months after the judgment was signed; (2) it was a
party to the underlying lawsuit; (3) it did not participate in the hearing that
resulted in the judgment complained of and did not timely file any post-judgment
motions or requests for findings of fact and conclusions of law; and (4) error
is apparent on the face of the record.  Ins. Co. of State of Penn. v. Lejeune,
297 S.W.3d 254, 255 (Tex. 2009); see also
Tex. R. App. P. 26.1(c), 30.  The face of the record consists of all the
papers on file in the appeal.  See Norman Commc’ns. v. Tex. Eastman Co.,
955 S.W.2d 269, 270 (Tex. 1997).

Here, it is undisputed that appellants
(1) filed their notice of restricted appeal within six months after the
judgment was signed, (2) were parties to the underlying lawsuit, and (3) did
not participate in the hearing that resulted in the default judgment or timely
file any post-judgment motions or requests for findings of fact and conclusions
of law.  The only issue is whether error
appears on the face of the record.

TRIAL NOTICE

Once a defendant has made an
appearance in a cause, he is entitled to the notice of the trial setting as a
matter of due process under the Fourteenth Amendment.  In re
$475,001.16, 96 S.W.3d 625, 627 (Tex. App.—Houston [1st Dist.] 2002, no
pet.) (citing Peralta v. Heights Med.
Ctr., Inc., 485 U.S. 80, 86, 108 S.Ct. 896, 899–900 (1988)); LBL Oil Co. v. Int’l Power Servs., Inc.,
777 S.W.2d 390, 390–91 (Tex. 1989).  A
post-answer default judgment is valid only if the defendant received notice of
the default judgment hearing.  Id. The plaintiff has the burden of
proving the defendant was served in strict compliance with the rules. Cox v. Cox, 298 S.W.3d 726, 733 (Tex. App.—Austin
2009, no pet.).

The Texas Rules of Civil Procedure
require reasonable notice of not less than forty-five days to the parties of a
first setting for trial.  Tex. R. Civ. P. 245. Any notice
required by the rules must be sent in accordance with rule 21a.  That rule provides that service by mail is
“complete upon deposit of the paper, enclosed in a postpaid, properly addressed
wrapper, in a post office or official depository under the care and custody of
the United States Postal Service.” Tex. R.
Civ. P. 21a.  A certificate by a party or an attorney
of record is prima facie evidence of the fact of service. Id.  Accordingly, Rule 21a
creates a presumption that a notice of hearing setting, if mailed pursuant to
the Rule, was received by the intended recipient.  See Cliff v. Huggins, 724 S.W.2d 778,
780 (Tex. 1987); Approx. $14,980 v. State, 261 S.W.3d 182, 187 (Tex. App.—Houston
[14th Dist.] 2008, no pet.).  The
evidentiary effect of this portion of the rule is to create a presumption of
service in compliance with the rule.  See In re E.A., 287 S.W.3d 1, 5 (Tex. 2009).
The presumption is not evidence, however, and when evidence is introduced
opposing this presumption, the presumption vanishes. Id.

A.   The Parties’ Arguments

Defendants acknowledge that the
green card and certificate of service admitted at trial created a presumption
of service.  They argue, however, that
because the same certificate of service was identified as applying to discovery
served on the defendants with the “Certificate of Written Discovery,” no
presumption could attach that it applied to service of the trial setting.

In response, Affordable Power
contends that the certificate of service introduced at trial was simply a page
from the deemed admissions that defendants relied upon to support its default
judgment.  It asserts that the letter
notifying Feinglein about the July 7, 2010 trial date—coupled with the signed
return green card bearing the same number entered into evidence and counsel’s
representation that notice was given—was sufficient evidence for the trial
court to have concluded that the defendants received notice of the trial
setting.  It points out that nothing on
the face of the record indicates that Fieglein did not receive the notice of
trial, such that the presumption that notice was given controls.  

B.   Analysis

We agree with Affordable Power that
the defendants have not demonstrated that the trial court erred in finding that
they had notice of the trial setting. 
Affordable Power introduced into evidence the letter it sent to Fieglein
stating that trial was set for July 7, 2010 and the signed “green card”
indicating that Fieglein received the letter. 
Affordable Power need not also rely on a certificate of service because
it is not relying on a presumption—the letter and signed green card are direct evidence of notice to the
defendants.  No evidence was introduced
rebutting this evidence that Fieglein had received notice.

Attached to the defendants’ reply
brief filed in this Court is an affidavit from Fieglein averring that he did
not receive notice of the trial setting. 
Defendants acknowledge that this extrinsic evidence cannot be considered
by the Court under current law, but ask that we reconsider such precedent in
the interest of protecting fundamental due process.  They assert that requiring them instead to
have pursued a bill of review in the trial court would impose upon them an
unjust and undue burden.  

We will not depart from
well-settled, binding precedent restricting our review to evidence that was
before the trial court.  E.g., Montgomery v. Kennedy, 669 S.W.2d 309, 312 (Tex. 1984) (holding
collateral attack on judgment requiring evidence outside the record must be
brought by bill of review in trial court rather than by restricted
appeal).  The defendants have not shown a
lack of notice of the trial setting on the face of the record. 

We overrule the defendants’ first
issue.  

SUFFICIENCY OF THE EVIDENCE

A post-answer default judgment
constitutes neither an abandonment of the defendant’s answer nor an implied
confession of any issues thus joined by the defendant’s answer.  Stoner
v. Thompson, 578 S.W.2d 679, 682 (Tex. 1979). Judgment cannot be entered on
the pleadings; instead, the plaintiff must offer evidence and prove his case as
in judgment upon a trial. See id.

Review of the record, for purposes
of demonstrating error in a restricted appeal, includes review of legal and
factual insufficiency claims. Norman
Commc’ns, 955 S.W.2d at 270; Herbert
v. Greater Gulf Coast Enters., 915 S.W.2d 866, 870 (Tex. App.—Houston [1st
Dist.] 1995, no writ).  While the
defendants complain generally that the judgment is not supported by legally or
factually sufficient evidence, their argument is limited to the legal
sufficiency, and we accordingly confine our analysis.  See Solutioneers
Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.,  237 S.W.3d 379, 389 n.9 (Tex. App.—Houston
[14th Dist.] 2007, no pet.).  We will only sustain a legal insufficiency
point if the record demonstrates (1) a complete absence of evidence of a vital
fact; (2) that the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact; (3) that the
evidence offered to prove a vital fact is no more than a mere scintilla; or (4)
that the evidence conclusively establishes the opposite of the vital fact.
 See City of
Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005).   

A.  
The Parties’ Arguments

The defendants argue that, because
they filed an answer, “judgment could not be entered on plaintiff’s original
petition”; instead, Affordable Power “must offer evidence and prove [its] case
like in a regular trial.”  Defendant
Virani complains that the “Commercial Enrollment Authorization” attached to
Affordable Power’s petition does not obligate him for the outstanding charges,
as he signed the agreement only as an owner of defendant Naan Properties,
LLC.  Both defendants argue that (1) the
charge of $12,994.18 for three months of electric service at an empty building
is unreasonable, (2) the “Early Termination fee” of $16,620.86 is not supported
by evidence given that the parties’ relationship was governed by a
month-to-month contract, and (3) the kilowatts used to calculate the
termination fee was not supported by any explanation or evidence.

The defendants further assert that
the business record affidavit and contract documents introduced at trial were
“inadmissible under TRE 902(10) because they were not filed fourteen days prior
to trial, with prior copy delivered to appellants.”  The defendants also point out that these
contract documents introduced and relied upon by Affordable Power at the
default judgment hearing involve different parties, different kilowatt hourly
rates, and a different temporal term than the contract documents that were
attached to Affordable Power’s petition and that were the subject of the deemed
admissions.  For these reasons, the
defendants assert that neither the documents introduced at trial nor the deemed
admissions support judgment in Affordable Power’s favor.

In response, Affordable Power
asserts that it is seeking liquidated damages that can be recovered in a suit
on a sworn account theory.  Because its
“petition, and the supporting affidavit and documents attached thereto
contained all the[] necessary components,” Affordable Power contends that the
defendants failure to file a verified denial entitles it to judgment as a
matter of law.  In response to defendant
Virani’s argument that he is not liable, Affordable Power notes that Virani is
listed as the “guarantor” in the contract, and contains his date of birth, home
address, and personal phone number.     

Affordable Power further argues
that its requests for admissions, which were deemed admitted by the defendants’
failure to answer, are sufficient to establish the joint and several liability
of the defendants and the amount owed. 
It also contends the judgment is supported by the business record
affidavit and contract documents introduced at the default judgment hearing and
contends that its failure to comply with the Texas Rule of Evidence 902(10)’s
requirement that business records be filed at least fourteen days before trial
was irrelevant because the defendants waived any complaint by failing to appear
at trial or object.     

B.   Suit on a Sworn Account

Rule 185 of the Texas Rules of
Civil Procedure, entitled Suit on Account, provides:

When any action or defense is founded upon an
open account or other claim for goods, wares and merchandise, including any
claim for a liquidated money demand based upon written contract or founded on
business dealings between the parties, or is for personal service rendered, or
labor done or labor or materials furnished, on which a systematic record has
been kept, and is supported by the affidavit of the party, his agent or
attorney taken before some officer authorized to administer oaths, to the
effect that such claim is, within the knowledge of affiant, just and true, that
it is due, and that all just and lawful offsets, payments and credits have been
allowed, the same shall be taken as prima facie evidence thereof, unless the
party resisting such claim shall file a written denial, under oath. A party
resisting such a sworn claim shall comply with the rules of pleading as are
required in any other kind of suit, provided, however, that if he does not
timely file a written denial, under oath, he shall not be permitted to deny the
claim, or any item therein, as the case may be. No particularization or
description of the nature of the component parts of the account or claim is
necessary unless the trial court sustains special exceptions to the pleadings.

The elements of a suit on a sworn
account claim are thus (1) the sale and delivery of merchandise or performance
of services; (2) that the amount of the account is “just,” that is, the prices
charged are pursuant to an express agreement, or in the absence of an
agreement, that the charges are usual, customary, or reasonable; and (3) that
the outstanding amounts remain unpaid.  E.g.,
Powers v. Adams, 2 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 1999, no
pet.).  

“Rule 185 is a procedural tool that
limits the evidence necessary to establish a prima facie right to recovery on
certain types of accounts.” Williams v.
Unifund CCR Partners Assignee of Citibank, 264 S.W.3d 231, 234 (Tex.
App.—Houston [1st Dist.] 2008, no pet.). 
“Rule 185 applies only to ‘transactions between persons, in which there
is a sale upon one side and a purchase upon the other, whereby title to personal property passes from one to the other, and the
relation of debtor and creditor is thereby created by general course of dealing
. . . .’”  Id. (quoting Meaders v.
Biskamp, 316 S.W.2d 75, 78 (Tex. 1958) (emphasis in original)).  “It does not apply to transactions between
parties resting upon a special contract.” Id.
(quoting Meaders, 316 S.W.2d at
78).  

The trial court’s $29,615.04
award was made up of $12,994.18 for unpaid electrical service and a $16,620.86
early termination fee.  A suit on
a sworn account applies to the sale of electric service.  See
generally Rimco Enters., Inc. v.
Texas Elec. Serv. Co., 599 S.W.2d 362, 365 (Tex. Civ. App.—Fort Worth 1980,
writ ref’d n.r.e.).  While the defendants
dispute here that the electric service charges were reasonable, accurate, or
just, Affordable Power’s petition attached an affidavit, made on the affiant’s
personal knowledge, attesting that: 

Attached to this affidavit is the final bill and/or invoice that was
sent to the listed customer.  The final
invoice was based on an open account with the customer for goods and/or
services rendered.  The final invoice is
part of our systematic records, based on goods and/or services provide to the
customer.  A true and correct copy of the
Contract Agreement with the listed customer and Terms of Service is attached as
Exhibit “1” of this Petition.

The final invoice accurately reflects charges for goods and/or services
provided.  The amount of the account is
just and true, it is due, the prices were charged according to a written
contract with the customer and the charges are usual, customary and
reasonable.  The just and true amount of
$29,615.04 plus interest, is currently due having been unpaid by the
customer.  This amount includes all
lawful offsets, payments and credits.  

Because this affidavit meets the requirements to establish a
prima facie case under Rule 185, the defendants’ failure to file a verified
denial would have precluded them from disputing the $12,994.18 charges for electrical service on Affordable Power’s
suit on a sworn account at trial.  See Vance v. Holloway, 689 S.W.2d 403,
404 (Tex. 1985).  For the reasons further
explained below, however, we nonetheless remand Affordable Power’s claim based
on unpaid electrical services to the trial court because judgment on that claim
is not “separable without unfairness to the parties” from the judgment on
Affordable Power’s breach of contract claim related to the termination fee,
which is not supported by legally sufficient evidence.  Tex.
R. App. P. 44.1(b); Iron Mountain
Bison Ranch, Inc. v. Easley Trailer Mfg.,
Inc., 42 S.W.3d 149, 162 (Tex. App.—Amarillo 2000, no pet) (“Given the
intertwined nature of appellee’s promissory estoppels theory and its other
theories, we remand the promissory estoppel issue for a new trial in the
interest of justice.”).          

C.  
Breach of Contract

The $16,620.86 early
termination fee is not the proper subject of a suit on a sworn account.  Regardless of the label Affordable Power
places on it, that claim is for breach of contract—not for goods and services
sold.  See Williams, 264 S.W.3d at 234 (Rule 185 applies only to sale of
goods); Hinojosa Auto Body & Paint,
Inc. v. Finishmaster, No. 03-08-00361-CV, 2008 WL 5210871, at *5 & n.9
(Tex. App.—Austin Dec. 12, 2008, no pet.) (mem. op.) (holding that amounts owed
for goods sold were conclusively proven up by Rule 185 affidavit and lack of a
verified denial, but that amounts attributed to early termination of agreements
were outside the scope of Rule 185 and had to be proven up as breach of
contract claim).   

To support a post-answer default judgment, the plaintiff must
produce evidence on all of the elements of its cause of action as in a trial on
the merits.  See Karl & Kelly Co., Inc. v. McLerran, 646 S.W.2d 174 (Tex. 1983);
Onwuteaka v. Gill, 908 S.W.2d 276,
281 (Tex. App.—Houston [1st Dist.] 1995, no writ).  To prove a claim for breach of contract, a
party must establish: (a) a valid contract; (b) the party performed or tendered
performance; (c) the opposing party breached the contract; and (d) the party
was damaged as a result of that breach.  Winchek v. Am. Express Travel Related Servs.
Co., 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.); Hackberry Creek Country Club, Inc. v.
Hackberry Creek Home Owners Ass’n, 205 S.W.3d 46, 55 (Tex. App.—Dallas 2006,
pet. denied).  

If a claim is unliquidated or not
proved by a written instrument, the trial court must hear evidence as to
damages. Tex. R. Civ. P. 243.  A claim is liquidated if the amount of damages
may be accurately calculated by the trial court from the factual, as opposed to
the conclusory, allegations in plaintiff’s petition and the instrument in
writing.  E.g., Novosad v. Cunningham,
38 S.W.3d 767, 773 (Tex. App.—Houston [14th Dist.] 2001, no pet.). 

Affordable Power contends that the trial court’s award of the
$16,620.86 early termination fee
is sustainable independently both by the contractual documents and the deemed
admissions.  We disagree.

1.    
Contract Documents  

Affordable Power’s petition and attached affidavit represent
that Affordable Power’s agreement with the defendants is governed by two
attached documents: (1) a “Commercial Enrollment Authorization” form signed and
guaranteed by defendant Virani on behalf of defendant Naan Properties and (2) a
document entitled “Commercial Terms of Service 12/24/36 Month L Commercial
Fixed Rate Products.”  The Commercial
Enrollment Authorization states that the signator agrees to be “obligated by
the terms and conditions set forth herein and to the Terms of Service
Agreement.”  The Terms of Service
document states that “the Commercial Enrollment Authorization form” is
“incorporated herein for the purchase of commercial electric service.”       

The Terms of Service document contains the following clauses
related to the term of the agreement and cancellation:

Term & Renewal: Your service under this Agreement will begin on your
meter reading date set by your Local TDSP or as requested by you or your
independent contractor.  Your service will continue on a
month-to-month basis unless a longer term has been specified on your
Authorization Form.  After the
expiration of your term, your service shall continue on a month-to-month basis
until terminated either by you or AP, LP. 
At the end of your service term your price per kWh will vary month to
month at the sole discretion of AP, LP.

Cancellation Rights:  If you cancel
this Agreement for any reason before the end of the initial term you will be
assessed an early cancellation fee that is the greater of the average of two
monthly bills or all remaining Estimated Customer Location Energy Volume
through the end of the Term multiplied by the positive difference, if any,
between the Energy Charge minus current Market Based Price for the aggregate
load of all Customer Location(s) (“Early Termination Fee”), whichever is
higher, plus (ii) [sic] an amount equal to $.002 per kWh of the Remaining Volume
(“Default Fee”), which represents the Parties’ estimated amount of transaction
costs to Affordable Power L.P. associated with the Customer’s default, which
are not reasonably able to be discerned, and which amount is not a penalty for
such default. . . . The “Market Based Price” shall mean a market price,
determined by Affordable Power L.P. in a commercially reasonable manner, for
the aggregate load of all Customer Location(s) for the Estimated Customer
Location Energy Volume over the term that would have remained if Customer had
not defaulted, but in no event shall such price be greater than the price that
Customer obtains under any agreement to provide replacement energy at each
Customer Location during the term that would have remained if Customer had not
defaulted.  

(emphasis
added).  

The Commercial Enrollment Authorization provides that a 12,
24, or 36 month initial term of service can be selected by circling one, but
none of those choices are circled.  It
also contains a slightly different cancellation provision:

Term:  Customer’s service begins on
the meter reading date set by the TDSP and will
continue for an initial term that ends on the first meter reading date 12/24/36 (Circle one only please)
calendar months thereafter.  After
the initial term, either party may cancel this Agreement upon 30 calendar days
advance written notice or unless contracted for a term extension at a fixed
price, customers account will automatically be changed to an adjustable monthly
rate based on ERCOT marker indices.  

Cancellation:  If you cancel
this Agreement for any other reason before the end of the initial term you will
be assessed an early cancellation fee that is equal to two average monthly
energy bills per each year of the term of your agreement.  An average monthly energy bill is the monthly
base charge plus the average price for energy supply in ¢ per Kwh multiplied by average monthly usage.  The parties agree that the amounts
recoverable hereunder are a reasonable estimate of loss and not a penalty. . .
. You may cancel this Agreement with no penalty if AP, LP increases the energy
rate only. 

Affordable Power’s petition claims that the defendants
“executed a valid and enforceable written contract for a fixed ‘initial’ term,”
but does not articulate what that term is. 
The petition then states that, in violation of the parties’ agreement,
the defendants terminated the contract before the end of the “initial”
term.  In its brief here, Affordable
Power acknowledges that “the length of the initial terms was inadvertently not
designated,” but urges that “the only reasonable deduction that can be made is
that the initial term was for a minimum of 12 months” and states “that is the
measure used in the calculation of damages.”[2]  Affordable Power further points to the title
of the Terms of Service document, which includes the phrase “12/24/36 Month L Commercial
Fixed Rate Products” to argue that there is an implied minimum 12-month
term.     

We disagree that these documents
taken together support a minimum 12-month term. 
Indeed, the Terms of Service, while including “12/24/36” in the title,
specifically recognizes the default is that the term “begin[s] on your meter
reading date . . . [and] will continue on a month-to-month basis unless a longer term has been
specified on your Authorization Form.” 
(emphasis added).  No longer term
was specified on the authorization form. 
Contrary to Affordable Power’s argument, the documents contemplate
month-to-month terms.    

There is also nothing in the
petition or the attached documents from which the trial court could have
determined the accuracy of the amount sought as the early termination fee.  “A claim is liquidated if the amount of
damages may be accurately calculated by the trial court from the factual, as
opposed to the conclusory, allegations in plaintiff’s petition and the instrument
in writing.”  Novosad v. Cunningham, 38 S.W.3d at 773.  While Affordable Power takes the position
that its damages are liquidated and, thus, do not require any evidentiary
support beyond the allegations in its petition and the parties’ contracts, it does
not point us to anything in the petition or attached documents from which the
$16,620.86 can be calculated.  From our
own review, it appears that even if determination of the initial term were not
an issue, the cancellation fee under the Terms of Service and Commercial
Enrollment Authorization could not be calculated without information about (1)
the defendants’ average KWh usage per month, (2) “remaining Estimated Customer
Location Energy volume” (3) the Energy Charge,” (4) “current Market Based Price,”
and the (5) “Remaining Volume,” and (6) the price that defendants’ obtained for
replacement service.  Affordable Power’s
petition and attached documents cannot support the trial court’s default
judgment on its breach of contract claim related to the $16,620.86 early
termination fee.

Affordable Power alternatively contends
that the trial court’s default judgment is supported by the documents
introduced with its business records affidavit at trial.  Specifically, it asserts that the Retail
Electric Service Agreement and Terms of Service (that are different than the
Terms of Service Attached to its petition), make clear that the agreement
between the parties “contained an ‘initial term’ of 12, 24, or 36 months.”  

The defendants are not parties to the
Retail Service Agreement.  That agreement
is between Affordable Power and the Greater Houston Retailers Association, Inc.
and provides for a Contract Start Date of June 2008, and a Contract End Date of
April 2010.  The Terms of Service
attached to the Retail Service Agreement provide that the “Initial Term” begins
with the Contract Start Month and ends with the Contract End Month (a 22-month
term, rather than the 12, 24, or 36 months Affordable Power argues is contained
in the terms).  Although Affordable Power
asserts in its brief that this Terms of Service document was initialed by the
defendant Verani, it instead appears to be initialed by the parties to the
Retail Service Agreement.  These Terms of
Service contains a cancellation clause similar to that in the terms of service
attached to Affordable Power’s petition:

Event of Default by Customer: If an event of default
occurs with respect to Customer, the Parties agree . . . . damages shall be the
sum of: (i) all remaining Estimated
Customer Location Energy Volume through the end of the Term (“Remaining
Volume”), multiplied by the positive difference, if any, between the Energy
Charge in this agreement minus a current Market Based Price for the aggregate
load of all Customer Location(s) (“Early Termination Amount”), plus (ii) an
amount equal to $.002 per kWh of the Remaining Volume (“Default Fee”), which
represents the Parties’ estimated amount of transaction costs to Affordable
Power L.P. associated with the Customer’s default, which are not reasonably able
to be discerned, and which amount is not a penalty for such default. . . . The
“Market Based Price” shall mean a market price, determined by Affordable Power
L.P. in a commercially reasonable manner, for the aggregate load of all
Customer Location(s) for the Estimated Customer Location Energy Volume over the
term that would have remained if Customer had not defaulted, but in no event
shall such price be greater than the price that Customer obtains under any
agreement to provide replacement energy at each Customer Location during the
term that would have remained if Customer had not defaulted. 

Although Affordable Power contends
that these contractual documents they introduced at the default judgment trial
support its breach of contract claim related to the early termination fee, the
defendants are not parties to these documents, and they are dated two months before
the defendant Virani executed the Commercial Enrollment Authorization.  While these
documents—unlike the documents attached to Affordable Power’s petition—do
provide for a fixed initial term (of 22-months)—there is no evidence that term
applied to the defendants’ service.  And,
as with the documents attached to Affordable Power’s petition, there is
insufficient information in the documents attached to the business records
affidavit at trial from which the $16,620.86 figure can be calculated.[3]  The business record affidavit and attached
documents cannot support the trial court’s default judgment on its breach of
contract claim related to the $16,620.86 early termination fee.

2.     Deemed
Admissions    

The trial court admitted at trial
requests for admission that were deemed admitted by the defendants’ failure to
answer.  Tex. R. Civ. P. 198.2(c).  They included the following admissions:

-        
Based upon Defendants’ request, the account made a basis for Plaintiff’s
Original Petition was opened.

-        
Defendants understood from the time the account made a basis of
Plaintiff’s Original Petition was opened that Defendants are responsible for
the actual use and possible early termination fees, as in accordance with the
Terms of Service.  

-        
Defendants fully understood the risk and obligations associated with the
electricity account.  

-        
The account reflected by the exhibits attached to Plaintiff’s Petition in
this cause is just and true.  

-        
The account reflected by the exhibits attached to Plaintiff’s Petition in
this cause is just and true.

-        
The account reflected by the exhibits attached to Plaintiff’s Petition in
this cause is the balance due, after all just and lawful offsets, payments and
credits have been allowed.

-        
Defendants have breached the contract made a basis of Plaintiff’s
Original Petition,

-        
Defendants presently owe Plaintiff the amount of $29,615.04 on said account.

-        
The contractual interest rate as agreed to by Defendant son the account
made a basis of Plaintiff’s Original Petition is 18% from March 4, 2009.

Affordable
Power asserts that their “requests for admissions establish each element of
[its] contractual sworn account claim, the amount of damages Appellee was owed
for breach of the Contract and Appellants’ joint and several liability.”  In response, the defendants note that—contrary to Affordable Power’s argument here
that the contractual documents introduced at trial control—the requests for admission state that the
contractual documents attached to the Original Petition control.  The defendants further assert that Affordable
Power’s right to “rely on deemed admissions as judicial admissions was waived when
appellee offered controverting evidence itself.”  Affordable Power does not respond to this
waiver argument.  

The primary
purpose of requests for admissions is to simplify trials by eliminating matters
about which there is no real controversy.  Peralta
v. Durham, 133 S.W.3d 339, 341 (Tex. App.—Dallas 2004, no pet.); see also Stelly v. Papania, 927 S.W.2d
620, 622 (Tex. 1996).  The rule regarding
requests for admissions does not contemplate or authorize admissions to
questions involving points of law.  Gore v. Cunningham, 297 S.W.2d 287, 291
(Tex. Civ. App.—Beaumont 1956, writ ref'd n.r.e.); see also White v. Watkins, 385 S.W.2d 267, 269 (Tex. Civ. App.—Waco
1964, no writ) (“[C]onclusions, opinions, and statements of subjective intent .
. . should not be deemed admitted facts.”).  “[R]esponses to requests for admissions merely
constituting admissions of law are not binding on the court. . . .”  Boulet
v. State, 189 S.W.3d 833, 838 (Tex. App.—Houston [1st Dist.] 2006, no
pet.); see also Jackson v. Tex. S.
Univ.-Thurgood Marshall Sch. of Law, 231 S.W.3d 437, 440 (Tex. App.—Houston
[14th Dist.] 2007, no pet.) (noting “a conclusion of law [is] not subject to
judicial admission”).  The meaning of an
unambiguous contract is a question of law.  Seagull
Energy E & P, Inc. v. Eland Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2006).

Generally,
an admission once admitted, deemed or otherwise, is a judicial admission, and a
party may not then introduce testimony to controvert it.  See Shaw
v. Nat’l Cnty. Mut. Fire Ins. Co., 723 S.W.2d 236, 238 (Tex. App.—Houston
[1st Dist.] 1986, no writ).  The supreme
court has held, however, that a party relying upon an opponent’s pleadings as
judicial admissions of fact must protect the record by objecting to the
introduction of controverting evidence and to the submission of any issue
bearing on the facts admitted.  Houston First Am. Sav. v. Musick, 650
S.W.2d 764, 769 (Tex. 1983).  A party’s
introduction or reliance upon evidence that contradicts deemed admissions
waives that party’s right to rely upon those deemed admissions.  Marshall
v. Vise, 767 S.W.2d 699, 699 (Tex. 1989); USAA Cnty. Mut. Ins. Co. v. Cook, 241 S.W.3d 93, 102 (Tex.
App.—Houston [1st Dist.] 2007, no pet.).

Here,
Affordable Power seeks to rely on deemed admissions that specifically related
only to the contractual documents attached to its Original Petition to
establish that the defendants breached their contract by terminating the
contract before the end of the “initial” term, thereby invoking a cancellation
fee.  Those documents, however, do not actually
provide for an initial term.  Affordable
Power argues here those documents are irrelevant because they were “only
attached to the [its] original petition and was not introduced or used or
trial.”  Then it argues that the default
judgment is instead supported by the different contractual documents (that do
contain a defined initial term) that were introduced at trial, but the
defendants are not parties to those documents. 
We need not reach the issue of whether the deemed admissions could
provide sufficient evidence of a breach of contract and unliquidated damages
because—by taking the position at
trial that a contract different than the contract that is the subject of the
deemed admissions governed the relationship—Affordable Power waived its ability to rely on those deemed admissions to
support its default judgment.  Musick, 650 S.W.2d at 769.

We thus conclude
that the trial court’s judgment on Affordable Power’s breach of contract claim
based on the defendants’ alleged early termination of the contract is not
supported by legally sufficient evidence, requiring that claim be remanded.  See
Bennett v. McDaniel, 295 S.W.3d 644, 645 (Tex. 2009) (“[W]hen the evidence
is legally insufficient to support a post-answer default judgment the proper
disposition is to remand for a new trial.”). 
Given that the defendants’ alleged liability for both unpaid utility
service and for early termination of the utility contract flows from the same
contract governing defendants’ service, and given that Affordable Power has
taken conflicting positions about what contract governs that service in arguing
its entitlement to a post-answer default judgment, we remand the entire case for
additional proceedings.  See Tex.
R. App. P. 44.1(b); See, e.g.,
Evans v. First Nat’l Bank of Bellville, 946 S.W.2d 367, 380 (Tex.
App.—Houston [14th Dist.] 1997, writ denied) (remanding, in the interest of
justice, all claims against one defendant because the validity of the claims
all relate to the “threshold issue” of what contract governs certain certificates
of deposit); Kneip v. Unitedbank-Victoria,
734 S.W.2d 130, 137 (Tex. App.—Corpus
Christi 1987, no writ) (reversing and remanding entire cause, in the interest
of justice, because both parties’ claims arose out “out of the execution of the
note and deed of trust, which was the focal point of the entire lawsuit,” such
that it “would be unfair to the parties to retry the case piecemeal”).       

CONCLUSION

Having
sustained defendants’ second issue, we reverse the trial court’s judgment and remand
for further proceedings.  

 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Bland and Huddle.











[1]           This was Fieglein’s
pre-Hurricane Ike address.





[2]
          This is Affordable Power’s only
reference in its briefing about how the $16,620.86 early termination fee was
calculated.  





[3]
          A line item on the computer
screen shot of Affordable Power’s account records that were part of the
business records introduced at trial contains the following notation: “03/04/09
16:46 Andrea. Contract Rate 0.119 Board Rate 0.0803 Difference 0.0387 add 2
mils 0.0407 Avg Usage 45375.00 Contract Terms 9 EFT 16620.86.”  No document in the record appears to reflect
a contract rate of 0.119, and Affordable Power does not reference, explain, or
rely upon this calculation in its brief.